**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

JOSEPH ACFALLE,
              Appellant,

      v.

DEPARTMENT OF THE ARMY,
              Agency.

DOCKET NUMBER
SF-0752-15-0305-I-1

DATE: November 22, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jessica L. Parks, Esquire, and Kerrie D. Riggs, Esquire, Washington, D.C.,
    for the appellant.

Rick W. Tague, APO, AP, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which upheld his removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2  The underlying facts are largely undisputed.  On January 25, 2009, the appellant was appointed to the Supervisory Paralegal Specialist position with the agency's Installation Legal Office and he was assigned to Camp Zama, Japan. Initial Appeal File (IAF), Tab 6, Exhibit (Ex.) 4E‑1 at 24 of 44, Tab 23, Ex. 2. Upon his appointment, the appellant signed a rotation agreement in which he agreed to a 36-month initial overseas tour.  IAF, Tab 6, Ex. 4E-1 at 23-24 of 44. The agreement stated that, when an employee does not have return rights, he must apply to return to the United States through the Department of Defense Priority Placement Program (PPP) before completing his tour.  *Id.* at 23 of 44.  The agreement further stated that the agency "agrees to reasonably help the employee to apply for return placement" in the United States.  *Id.*  It also advised the appellant that "failure to abide by the terms of the agreement may result in a proposal to separate the employee from the Federal service."  *Id.*

¶3  In January 2010, and then again in January 2012, the appellant's overseas tour was extended for 2-year periods.  *Id.* at 24 of 44.  On August 5, 2013, the agency suspended the appellant for 7 days for possessing and using an illegal

stimulant. IAF, Tab 23, Exs. 22‑25. On August 12, 2013, the agency notified the appellant that it would not grant his request to extend his term appointment for a third time and advised him that he could register in the Department of Defense's PPP. *Id*., Exs. 8‑9. The appellant notified the agency of his intent to register in the PPP. *Id.*, Exs. 1, 9. The appellant's supervisor certified that his performance and conduct were acceptable for registration in the PPP. *Id.*, Ex. 11.

¶4    On August 30, 2013, the agency advised the appellant that he was unable to register in the PPP "due to the pending investigation of [his] security clearance." *Id.*, Ex. 12. On January 23, 2014, an agency Human Resources Specialist informed the appellant that the agency had changed its stance and that he could register with the PPP, and his supervisor certified again that his performance and conduct were acceptable for registration in the PPP. *Id.*, Exs. 13-14. On January 25, 2014, the appellant's overseas tour of duty ended, but he remained employed by the agency and continued to be enrolled in the PPP. *Id*., Ex. 1.

¶5    On May 16, 2014, the appellant pled guilty to violating the Stimulus Control Law in a Japanese court. IAF, Tab 6, Ex. 4E‑2; IAF, Tab 9 at 12‑13. On May 28, 2014, the agency offered the appellant an Administrative Support Assistant position upon his return to the United States. IAF, Tab 23, Ex. 15; IAF, Tab 11 (Admissions). On July 10, 2014, the agency informed the appellant that the PPP job offer was withdrawn because he did not have a "favorable [National Agency Check and Inquiries]"[2] and his clearance had been suspended. IAF, Tab 23, Ex. 16. The agency also advised him that he could no longer be registered in the PPP "[d]ue to ongoing issues with [his] security clearance." *Id.* The agency later informed the appellant that his May 16, 2013 guilty plea and sentence was an additional reason for his ineligibility in the PPP. IAF, Tab 6,

---

[2] This is the basic and minimum investigation required on all new Federal employees. Personnel Security, http://www.dami.army.pentagon.mil/site/PerSec/InvTypes.aspx (last visited Nov. 21, 2016).

Ex. 4E-2, Tab 9 at 12-13.[3]   On July 22, 2014, the agency's Civilian Personnel Advisory Center (CPAC) determined that the appellant was "ineligible" to enroll in the PPP and he was removed from the PPP "for cause."   IAF, Tab 6, Ex. 4E-2. The agency subsequently proposed to remove the appellant because his overseas term had expired, he did not have return rights, and he was ineligible for the PPP. *Id.*, Ex. 4E.   After submitting an oral and a written reply, the agency upheld the appellant's removal, which became effective on or about January 27, 2015.  *Id.*, Exs. 4A-4D.

¶6      The appellant filed a Board appeal.  IAF, Tab 1.  The administrative judge found that the appellant made a nonfrivolous allegation of Board jurisdiction, and the appellant withdrew his request for a hearing.   IAF, Tabs 15, 18-19.   The administrative judge issued an initial decision affirming the removal action.  IAF, Tab 27, Initial Decision (ID).   Among other things, the administrative judge found that the agency proved the charge by preponderant evidence, concluded that the appellant was not denied due process or subjected to double punishment, held that there was a nexus between the sustained charge and the efficiency of the service, and upheld the removal penalty.  ID at 9-22.

¶7      The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply brief.  Petition for Review (PFR) File, Tabs 1, 3-4.   On review, the appellant makes the following assertions: (1) the administrative judge incorrectly decided his due process claim; (2) he was still eligible for the PPP; (3) even if he were ineligible for the PPP, the agency did not have the authority to remove him for this reason; and (4) he was subjected to double punishment.  PFR File, Tab 1 at 8-28.

---

[3] The appellant was sentenced to 18 months in prison, but that sentence was suspended for 3 years.  IAF, Tab 9 at 12-13.

**DISCUSSION OF ARGUMENTS ON REVIEW**

¶8      On review, the appellant asserts that his due process rights were violated because he was unable to challenge the agency's decision to find him ineligible for the PPP, and the deciding official "refused" to look behind that decision as part of the removal process.   PFR File, Tab 1 at 8-14.   These assertions are not persuasive.

¶9      We disagree with the appellant that *Jacobs v. Department of the Army*, 62 M.S.P.R. 688 (1994), *McGillivray v. Federal Emergency Management Agency*, 58 M.S.P.R. 398 (1993), and *Siegert v. Department of the Army*, 38 M.S.P.R. 684 (1988), support his assertion that he had a due process right to challenge the CPAC's determination that he was not eligible for the PPP.  PFR File, Tab 1 at 9. Rather, these cases stand for the proposition that the Board has the authority to review the validity of an agency's underlying determination regarding disqualification from the Chemical Personnel Reliability Program, revoking procurement authority, and revoking clinical privileges, respectively.  *Jacobs*, 62 M.S.P.R. at 693-95; *McGillivray*, 58 M.S.P.R. at 402-05; *Siegert*, 38 M.S.P.R. at 687-91.[4]   The appellant's reliance on cases involving revoking security clearances is misplaced because employees in such cases are entitled to specific procedures.   PFR File, Tab 1 at 10; *see Ryan v. Department of Homeland Security*, 793 F.3d 1368, 1371 (Fed. Cir. 2015) (explaining that, in the course of reviewing an adverse action based on an underlying decision to deny or revoke a security clearance, the Board has the authority to review only whether the employee's position required a clearance, the clearance was denied, suspended or revoked, and the procedural protections in 5 U.S.C. § 7513 were followed).[5]   The

---

[4] We discuss the appellant's arguments involving the Board's authority to review the CPAC's determination *infra* ¶ 12.

[5] In assessing the relevant penalty factors, the deciding official stated that his decision was based only on the criminal conviction, not on the security clearance being suspended.  IAF, Tab 22 at 21 of 26.  The record contains the agency's January 8, 2015 memorandum entitled "Intent to Revoke Security Clearance," but the administrative

appellant has not identified, and we are not aware of, any authority that extends the procedures in security clearance cases or otherwise provides similar procedures to an employee challenging an agency determination that he was ineligible for the PPP.

¶10    The appellant also asserts that he was "completely deprived . . . of any meaningful due process before his removal" because the deciding official had no authority to change the outcome. PFR File, Tab 1 at 11-14, Tab 3 at 6. It is true that the deciding official did not look behind the CPAC's determination that he was ineligible for the PPP. IAF, Tab 23, Ex. 18 at 26. The deciding official stated in his telephonic deposition that he had inquired to ensure that the agency's policies were properly followed and he considered the appellant's responses to the proposed removal; however, he testified that none of the information presented by the appellant would have changed the fact that his overseas tour had ended, he had no return rights, and he was not eligible for the PPP. IAF, Tab 25 at 17-18 of 19. Moreover, as the administrative judge noted in the initial decision, the deciding official could have sought an additional tour extension for the appellant. ID at 16; IAF, Tab 25 at 9 of 19. The appellant's citation in support of this argument to *Li v. Department of Health & Human Services*, MSPB Docket No. DC-0752-15-0139-I-1, Initial Decision (Mar. 30, 2015), PFR File, Tab 1 at 10-11, is not persuasive because Board initial decisions are of no precedential value and cannot be cited or relied on as controlling authority, *Rockwell v. Department of Commerce*, 39 M.S.P.R. 217, 222 (1988).

¶11    Ultimately, the appellant does not dispute that he was given notice of the proposed removal, he provided the agency with oral and written responses, and the deciding official considered his responses in making the decision to remove him. This is all of the process to which he was entitled in this removal appeal.

---

judge indicated that this memorandum was not a factor in his decision. ID at 9-10 & n.5; IAF, Tab 22 at 9-20 of 26. Similarly, we have not considered the security clearance issue in our analysis of this appeal.

*See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985); *see also* 5 U.S.C. § 7513.

¶12     We also have considered the appellant's assertion that he was eligible for the PPP, the administrative judge failed to make "an independent determination" regarding his PPP eligibility, and the Board should conduct a "de novo" review of the facts and evidence regarding the CPAC's determination. PFR File, Tab 1 at 17‑25. Even if we assumed for the purpose of our analysis that the Board was authorized to review the CPAC's determination that he was ineligible for the PPP, we would affirm this determination and conclude that the agency proved the charge.[6]   The PPP Handbook states that an employee "whose performance or conduct is less than fully satisfactory" is ineligible to register in the PPP. IAF, Tab 23, Ex. 10 at 3-6. It further states that PPP registration will be denied to any employee when the registering activity (in this case, the CPAC) "has knowledge of performance or conduct that directly and negatively affects the employee's qualifications, eligibility, or suitability for placement." *Id.*  Notwithstanding the certifications by the appellant's supervisor, his guilty plea, conviction, suspended criminal sentence, and subsequent 7-day disciplinary suspension constitute sufficient "knowledge" by the CPAC of conduct that directly and negatively affected his qualifications, eligibility, or suitability for placement. *E.g.*, IAF, Tab 23, Exs. 10-11, 14, 23-24, 29. Moreover, the appellant has not persuaded us that the administrative judge erred when he credited the statement of the Deputy Regional Director, Far East Region, U.S. Army Civilian Human Resources, that the CPAC—and not the employee's supervisor—makes the ultimate decision on PPP eligibility. ID at 11-12; IAF, Tab 22 at 8 of 26.

¶13     In addition, we have considered the appellant's argument that the administrative judge erred by failing to discuss the rehabilitation provision of the

---

[6] The appellant does not challenge the administrative judge's finding that his overseas tour had expired and he did not have return rights. ID at 9. We see no reason to disturb these findings.

PPP Handbook. PFR File, Tab 1 at 24-25. This provision states, in pertinent part, that in the case of substantiated conduct problems, eligibility will be withheld for a representative period of time to ensure that the necessary corrective measures have had their intended effect. IAF, Tab 23, Ex. 10 at 3-6. Registration will be permitted after this period if the employee has demonstrated fully satisfactory performance and conduct and is otherwise still eligible and if the registering activity is reasonably assured that the problem has been resolved. *Id.* Contrary to the appellant's assertion on review, the administrative judge mentioned his rehabilitation argument and cited to the PPP Handbook page that discusses the rehabilitation provision. ID at 12. Moreover, we discern no error with the administrative judge's conclusion that it was reasonable for the agency to find that the appellant was ineligible to register for the PPP while he was serving his 3-year suspended criminal sentence, which was imposed by an independent judicial authority. ID at 12; IAF, Tab 9 at 12-13, Tab 22 at 8, Tab 25 at 10, 12‑13.

¶14 Next, we have considered the appellant's assertion that he was subjected to double punishment. PFR File, Tab 1 at 25-28; *see Wigen v. U.S. Postal Service*, 58 M.S.P.R. 381, 383 (1993) (stating that an agency cannot impose disciplinary or adverse action more than once for the same misconduct). The appellant has not cited any persuasive authority to support his assertion that the CPAC's determination that he was ineligible for the PPP was disciplinary in nature or otherwise a form of punishment. *See, e.g.*, *Scott v. Department of the Air Force*, 113 M.S.P.R. 434, ¶ 10 (2010) (stating that the agency's failure to place the appellant in the PPP is not an appealable adverse action). Even if we assumed for the purpose of our analysis that the CPAC determination was disciplinary in nature, we would not conclude that the appellant was subjected to double punishment. In contrast to the 7-day suspension, which was based on the appellant's misconduct, the removal action was based on a consequence of the misconduct (i.e., ineligibility for the PPP) as well as the expiration of his

overseas tour and the fact that he did not have return rights. We therefore affirm the initial decision in this regard. *See, e.g.*, *Nguyen v. Department of Homeland Security*, 737 F.3d 711, 717 (Fed. Cir. 2013) (affirming the Board's determination that the agency did not subject Mr. Nguyen to double punishment when it demoted him based on the Department of Justice's determination that he was "*Giglio* impaired,"[7] even though the Department of Homeland Security previously had disciplined him for the underlying misconduct that lead to the determination).

¶15 Finally, we are not persuaded by the appellant's argument that the agency did not have the authority to remove a permanent, career-tenured employee for failure to be eligible for the PPP. PFR File, Tab 1 at 14-17; *see Soper v. United States*, 677 F.2d 869, 870-72 (Ct. Cl. 1982) (upholding Mr. Soper's removal based on his failure to obtain U.S. employment when his overseas rotation had expired and his failure to register in the PPP).[8]

¶16 Accordingly, we affirm the initial decision.

### NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

---

[7] Under *Giglio v. United States*, 405 U.S. 150 (1972), investigative agencies must turn over to prosecutors any potential impeachment evidence concerning the agents involved in a case, and prosecutors then will exercise discretion regarding whether the evidence must be turned over to the defense. *Bennett v. Department of Justice*, 119 M.S.P.R. 685, ¶ 3 n.2 (2013). A "*Giglio*-impaired" agent is one against whom there is potential impeachment evidence that would render the agent's testimony of marginal value in a case. *Id.*

[8] The decisions of the former U.S. Court of Claims have been adopted by the U.S. Court of Appeals for the Federal Circuit as binding precedent until such time as the latter, sitting en banc, overrules such precedent. *South Corporation v. United States*, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982). The factual circumstances surrounding Mr. Soper's failure to register in the PPP are different from the circumstances that led to the CPAC's determination here that the appellant was ineligible for the PPP; however, the court's decision in *Soper* remains binding precedent.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                    _____
                                 Jennifer Everling
                                 Acting Clerk of the Board

Washington, D.C.